JASON P. REINSCH (Texas Bar No. 24040120)
*pro hac vice pending*
Email:  reinschj@sec.gov

Attorney for Plaintiff
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, Texas 76102
Telephone: (817) 900-2601
Facsimile: (817) 978-4927

LOCAL COUNSEL
DANIEL S. LIM (Cal. Bar. No. 292406)
Email:  limda@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Tel: (323) 965-3957
Fax: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER SLAGA a/k/a KEITH RENKO, Q4 CAPITAL GROUP, LLC, J4 CAPITAL ADVISORS LLC, and HAYDEN GREENE, <br><br> Defendants. | Case No.  8:23-cv-01425 <br><br> **COMPLAINT** |

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") files

this Complaint against Defendants Christopher Slaga a/k/a Keith Renko ("Slaga"),
Q4 Capital Group, LLC ("Q4 Capital"), J4 Capital Advisors LLC ("J4 Capital"), and
Hayden Greene ("Greene") (collectively, "Defendant(s)"), and alleges as follows:

## JURISDICTION AND VENUE

1.      The Commission brings this action against Defendants pursuant to
authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act of 1933
("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of
the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and
78u(e)].  This Court has jurisdiction over this action pursuant to Section 22(a) of the
Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange
Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

2.      Defendants have, directly or indirectly, made use of the means or
instrumentalities of interstate commerce, of the mails, or of the facilities of a national
securities exchange in connection with the transactions, acts, practices, and courses of
business alleged in this complaint.

3.      Venue is proper in this district pursuant to Section 22(a) of the Securities
Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. §
78aa(a)], because certain of the transactions, acts, practices, and courses of conduct
constituting violations of the federal securities laws occurred within this district.  In
addition, venue is proper because Greene resides in Costa Mesa, California, which is
served by this division.

## SUMMARY

4.      This case concerns Defendants' scheme that raised approximately $3.5
million from at least 17 investors through a fraudulent and unregistered securities
offering.  From in or around 2018 to at least 2022, Slaga—through Q4 Capital and J4
Capital, each of which he controlled—sold to investors interests in three purported
investment vehicles (each, an "Investment Fund").   Using his alias "Keith Renko,"
Slaga represented to investors that he would use their funds to generate profits by

trading marketable securities utilizing his "proprietary computer based quantitative and statistical algorithms."

5.     However, there were no investment vehicles or proprietary computer algorithms.  Instead, once Slaga received investor funds, he misappropriated the vast majority of the money to fund his lavish lifestyle.  Of the approximately $3.5 million of investor funds that Defendants raised, Slaga used nearly $2.9 million on personal expenses including, among other things, travel, jewelry, and rent for properties in Florida, the Bahamas, and Barbados.  Slaga also used a portion of these investor funds to trade securities in his personal brokerage account for his own benefit and incurred trading losses of more than $450,000.

6.     To conceal his fraud, Slaga provided investors with forged account statements purporting to show the Investment Funds maintaining large balances at well-known financial institutions and earning substantial returns.  In truth, neither Slaga nor the entities he controlled nor the Investment Funds held accounts with these institutions.  Slaga also made some distributions to investors to further the façade that the Investment Funds were profitable.  However, those purported distributions were merely the return of the investors' own capital disguised as profits.

7.     For his part, Greene solicited investors who purchased approximately $1.4 million in interests in the Investment Funds.  Slaga rewarded Greene's success by paying him sales commissions to the detriment of the investors.

8.     By engaging in this conduct, Defendants violated, and unless restrained and enjoined by the Court will continue to violate, the federal securities laws. Specifically, Slaga, Q4 Capital, and J4 Capital violated Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  Greene violated Section 15(a) of the Exchange Act.

9.     In the interest of protecting the public from any further fraudulent activity and harm, the Commission brings this action against Defendants seeking:  (a)

permanent injunctive relief against all Defendants; (b) an order requiring Slaga, Q4 Capital, and J4 Capital, jointly and severally, to disgorge their ill-gotten gains, along with pre-judgment interest; (c) an order requiring Greene to disgorge his ill-gotten gains, along with pre-judgment interest; (d) the imposition of civil penalties against Slaga, Q4 Capital, and J4 Capital; (e) an officer-and-director bar against Slaga; and (f) all other equitable and ancillary relief to which the Court determines the Commission is entitled.

## THE DEFENDANTS

10.    **Slaga** (also known as Keith Renko), age 49, resides in Barbados.  He is president and sole owner of Q4 Capital and J4 Capital.  In October 2002, Slaga pleaded guilty to federal wire fraud charges in connection with a scheme in which he raised over $19 million from investors.  *See United States v. Slaga*, No. 4:02-cr-00654 (S.D. Tex.) (the "2002 Criminal Action").   Investors in that scheme believed that they were investing their money in funds managed by Slaga and were provided false investment returns and fabricated investment account statements.  In reality, Slaga used investor funds to purchase of a home, luxury items, and for investments in entities controlled by close friends and family.  In February 2003, he was sentenced to 48 months in prison and ordered to pay more than $20.3 million in restitution.

11.    **Q4 Capital** is a Delaware limited liability company with its purported principal place of business in Stamford, Connecticut.  Q4 Capital purports to be the managing member of Q4 Capital Group FX Opportunity Fund LLC ("Q4 FX Fund") and Q4 Capital Group Macro Growth Fund LLC ("Q4 Macro Fund"), each defined above as an "Investment Fund."  Neither Q4 Capital nor its securities are registered with the Commission.

12.    **J4 Capital** purports to be a limited liability company with its principal place of business in Stamford, Connecticut.  However, J4 Capital is not registered as an entity in any U.S. jurisdiction.  J4 Capital purports to be the managing member of J4 Capital, LLC (defined above as an "Investment Fund").  Neither J4 Capital nor its

securities are registered with the Commission.

13. **Greene**, age 32, resides in Mission Viejo, California.  Greene worked for Q4 Capital from 2019 to 2022, soliciting investors to purchase units in the Investment Funds and performing market research for the Investment Funds managed by Q4 Capital.

## RELATED ENTITIES

14. **J4 Capital, LLC** (the "J4 Fund," and defined above as an "Investment Fund") purports to be a limited liability company with its principal place of business in Stamford, Connecticut.  Slaga never formed the J4 Fund or registered it as an entity.  Neither the J4 Fund nor its securities are registered with the Commission.

15. **Q4 Capital Group FX Opportunity Fund, LLC** (the "Q4 FX Fund," and defined above as an "Investment Fund") purports to be a limited liability company with its principal place of business in Stamford, Connecticut.  Slaga never formed the Q4 FX Fund or registered it as an entity.  Neither the Q4 FX Fund nor its securities are registered with the Commission.

16. **Q4 Capital Group Macro Growth Fund, LLC** (the "Q4 Macro Fund," and defined above as an "Investment Fund") purports to be a limited liability company with its principal place of business in Stamford, Connecticut.  Slaga never formed the Q4 Marco Fund or registered it as an entity.  Neither the Q4 Macro Fund nor its securities are registered with the Commission.

## FACTUAL ALLEGATIONS

### A.    Slaga's Alias and the Origins of the Investment Funds

17. In or around February 2018, Slaga created a LinkedIn account using his alias, Keith Renko.  On information and belief, Slaga used the Renko alias, *inter alia*, to conceal from the public his criminal record from the 2002 Criminal Action.

18. Soon thereafter, Slaga began using the Renko LinkedIn account to solicit investments in the J4 Fund.  In offering documents, Slaga claimed that the J4 Fund was a private investment fund managed by J4 Capital and Renko, whom Slaga

dubbed "a seasoned trader."  Slaga stated that the J4 Fund would trade in marketable securities using "proprietary computer based quantitative and statistical algorithms" in order to maximize asset appreciation.

19.     In or around 2019, a preexisting and unrelated entity also named "J4 Capital, LLC" raised concerns with LinkedIn regarding Renko's LinkedIn profile, where Slaga (posing as Renko) held himself out as president of "J4 Capital, LLC." Slaga thereafter launched a new management company, Q4 Capital, and began offering units in two new funds: the Q4 FX Fund and the Q4 Macro Fund.

20.     Slaga never formed or registered as entities any of the Investment Funds.

**B.     The Investment Funds' Offering Materials**

21.     In order to solicit investments in the Investment Funds from prospective investors, Slaga created various offering materials.  He prepared a private placement memorandum ("PPM") and a subscription agreement for each of the Investment Funds.  He also drafted a PowerPoint presentation ("Slide Deck") that touted the purported benefits of Slaga's investment scheme.

22.     The PPMs and subscription agreements for all three Investment Funds contained almost identical language, stating that the objective of each Investment Fund was to:

> maximize total return on capital by seeking capital appreciation and, from time to time, current income, through the development and management of a portfolio of marketable securities, including currencies, equity instruments, debt instruments, futures contracts, option contracts and swap contracts.

Each PPM identified the Managing Member of the respective Investment Fund to be Renko, Slaga's alias.  The PPMs further indicated that Slaga would use his "proprietary computer based quantitative and statistical algorithms" to generate profits and limit risk for the investor funds.

23.     The Slide Deck supplemented the statements in the PPMs for the Q4 FX

Fund and the Q4 Macro Fund.  Slaga predicted a forthcoming "catastrophic" event in the global debt and equity markets and claimed that his trading strategy would profit from these events.  Slaga compared his approach to a famous book and movie that chronicled the 2008 Financial Crisis:

> Have you seen or read "the Big Short"?  The coming credit crisis will likely be even more significant, and the opportunity to play contrarian and profit immensely during the crisis are not well documented in the financial media.

The Slide Deck also regurgitated the fabricated background of Slaga's alias, Renko, noting that he was a "devout statistician" that "attended Dartmouth and went on to build a reputation as an experienced and successful trader at several well-known Wall Street institutions."

24.     Slaga, or persons working at his direction, provided prospective investors in each of the Investment Funds with a PPM and the respective subscription agreement, typically by email.  In the course of the Q4 FX Fund and the Q4 Macro Fund offerings, these persons also provided the Slide Deck to some prospective investors.

25.     Slaga, and those working on his behalf, solicited investors through the internet (including LinkedIn) and email, among other means.  In particular, Slaga, and those working on his behalf, reached out through LinkedIn messages to prospective investors with whom they had no prior connections.  Investors in the Investment Funds had no prior relationship with Slaga.  Indeed, these investors were under the impression they were dealing with Renko, not Slaga.  Slaga also published the offering documents for the J4 Fund on J4 Capital's website.  The general public could review the offering documents freely without the need for a password.

26.     In total, Slaga raised approximately $3.5 million from 17 investors residing in at least four states and Canada.

### C.   Misrepresentations by Slaga, J4 Capital, and Q4 Capital

27.   Slaga, J4 Capital, and Q4 Capital made several misrepresentations to prospective investors in the Investment Funds.

#### 1.   Use of the Renko Alias

28.   Slaga misrepresented his true identity in the PPMs and the Slide Deck by identifying the manager of the Investment Funds as Renko.  In an effort to create credibility, Slaga claimed in his LinkedIn profile and in the Slide Deck to have graduated from Dartmouth College and to have been a successful trader at multiple Wall Street firms.  None of these representations were true.  Slaga never worked at any Wall Street firms and he briefly attended, and did not graduate from, the University of Houston.  By using his alias, Slaga also concealed his criminal record resulting from the 2002 Criminal Action.

#### 2.   Slaga's Fabricated Capital Contribution

29.   Slaga misrepresented in the PPMs that the managing members of each management company (*i.e.*, J4 Capital and Q4 Capital) had made capital commitments of $2,000,000 to each Investment Fund, to be funded personally by Renko.  These representations were designed to mislead prospective investors into believing that Slaga's interests were aligned with theirs because Slaga and his management companies had "skin in the game."  But these representations were also untrue.  Neither Slaga nor Q4 Capital nor J4 Capital ever funded any such purported capital commitments.

#### 3.   Existing Investment Capital

30.   Slaga represented in the J4 Fund PPM that the J4 Fund had already received $125 million in commitments from institutional and other investors.  This representation was intended to add legitimacy to the J4 Fund.  However, Slaga never obtained these commitments, and the J4 Fund was never funded—much less formed.  Instead of funding the J4 Fund, as alleged below, Slaga misappropriated investor funds.

### 4.      Association with Well-known Financial Entities and Gatekeepers

31.     Slaga made misrepresentations about well-known third parties that were purportedly involved with the Investment Funds.  These misrepresentations also had the effect of lending an air of legitimacy to Slaga and the Investment Funds.

32.     In this regard, Slaga represented to prospective investors in email communications that the Investment Funds were audited by a Big Four accounting firm, Deloitte & Touche LLP ("Deloitte").  To further cement this lie, Slaga sent to certain investors a forged letter on the Deloitte's letterhead stating that it had conducted a "review" of certain Investment Fund accounts.  The forged letter from the Deloitte also contained statements that created the impression that a certain well-known financial institution, Goldman Sachs & Co, LLC ("Goldman"), was the prime broker for the Q4 Macro Fund.  Further, Slaga sent investors forged account statements purporting to show the Investment Funds maintaining assets and securities at another well-known financial institution, J.P. Morgan Securities, LLC ("JP Morgan")

33.     In truth, Deloitte, Goldman, and JP Morgan had no relationship and did not perform any services for Slaga, Q4 Capital, J4 Capital, or the Investment Funds. Rather, Slaga used a portion of investor funds to trade securities for his own benefit in his personal online brokerage account.

### 5.      Fabricated Investment Performance

34.     Slaga misrepresented the performance of the Investment Funds.  The forged account statements, as well as the forged letter from Deloitte, showed Investment Fund account balances that far exceeded net asset values that could be imputed to the Investment Funds.

35.     Slaga also provided investors with periodic status reports ("Investor Updates") that communicated the fabricated performance of the Investment Funds. For example, in at least one update that Slaga emailed to investors in or around 2020,

he represented the performance of the Investment Funds for the first quarter of 2020 as being between 68% and 100%.  However, Slaga did not trade on behalf of the Investment Funds.

### D.   Misuse of Investor Funds by Slaga, J4 Capital, and Q4 Capital.

36.   The PPMs for the Investment Funds represented that the Investment Funds' assets would be used to "invest and trade in a broad range of marketable securities . . . ."  The PPMs further provided that the managing member (J4 Capital or Q4 Capital, as applicable) would be allocated 25 percent of the Investment Funds' gains, that the managing member would bear its own organizational and offering expenses, and that the Investment Funds would bear certain administrative expenses. The PPMs did not provide for the managing member to be compensated in any other way.

37.   Slaga, individually and on behalf of J4 Capital and Q4 Capital, misused investor funds.  Initially, he commingled all investor funds in bank accounts in the name of JMC 4, LLC (an entity that Slaga controlled) and Q4 Capital.  Slaga transferred investor funds into various accounts, including his personal bank accounts and his personal brokerage account.  Of the approximately $3.5 million of investor funds that Slaga raised, he used $2,893,934.32 on personal expenses, which included, among other things, travel, restaurants, jewelry, and rent for properties in Florida, the Bahamas, and Barbados.  He also used a portion of that money to fund an online trading account in his own name and for his own benefit.  Slaga ultimately realized a loss of more than $450,000 through his trading activity.

38.   Slaga's scheme ended in or around 2022 as Slaga was unable to lure new investors and as existing investors became aware of the Commission's investigation that preceded the filing of this action.

### E.   Greene's Role

39.   Slaga employed Greene from 2019 through 2022.  Posing as Renko, Slaga recruited Greene on LinkedIn, leading Greene to believe that he was being

hired to help Renko solicit investors, and, as he learned the business, assist him in executing trading strategies on behalf of the Investment Funds.  Greene had previous experience in the financial services industry.

40.     Greene's titles during his employment with Q4 Capital were "Operator of Newport Beach Trading Desk" and later "VP of Trading."  However, Greene never made any trades or reviewed any brokerage statements for the Investment Funds. Instead, Greene provided trading ideas to Slaga, who assigned Greene trading research tasks.  At all times, Greene believed he was dealing with Renko and had never heard of Slaga.  Based on his interactions with Slaga, Greene believed that investor funds were being used to trade as disclosed in the offering documents, and that Renko was doing so profitably.

41.     From 2019 to 2021, Greene solicited at least eight investors who invested a total of approximately $1.4 million in the Investment Funds.  In soliciting investors, Greene advised some of them on the merits of investing in the Investment Funds and provided to investors his own account statements of units he believed he held in the Investment Funds for the purpose of showing the net asset value and performance of the Investment Funds.  Over the course of Greene's employment, Slaga paid Greene approximately $85,000 in transaction-based compensation.

42.     Greene's involvement with Q4 Capital ended in 2022.

**F.     The Investments Offered and Sold by Defendants Were Securities**

43.     Based on Slaga's, Q4 Capital's, and J4 Capital's misrepresentations, investors invested money into one or more Investment Funds controlled by Slaga in order to receive returns in the form of profits purportedly generated from Slaga's securities trading.

44.     Slaga pooled the investor funds—which investors believed would be used solely for the investment—together in two bank accounts.  The investor funds were managed entirely by Slaga.

45.     Whether investors would profit from their investments was entirely

dependent on Slaga and the performance of his purported securities trading strategy. Indeed, both investors on one hand, and Slaga, Q4 Capital, and J4 Capital on the other, would profit if Slaga's purported securities trading strategy was successful; in this way, their fortunes were linked.

## FIRST CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

### *(Against Slaga, Q4 Capital, and J4 Capital)*

46.    Plaintiff re-alleges and incorporates paragraphs 1 through __ of this Complaint by reference as if set forth verbatim in this Claim.

47.    Among other things, Slaga, Q4 Capital, and J4 Capital made various misrepresentations and omissions to investors in the PPMs, Slide Deck, and Investor Updates.  Slaga, Q4 Capital, and J4 Capital misrepresented Slaga's true identity through the use of the Renko alias.  They also falsely claimed that Renko, on behalf of Q4 Capital and J4 Capital, made $2,000,000 in capital contributions to the respective Investment Funds, and that, in the case of the J4 Fund, that fund had already closed on $125 million of commitments from institutional and other investors.  Slaga, Q4 Capital, and J4 Capital also misrepresented to investors that the Deloitte, Goldman, and JP Morgan had relationships with and provided services for Slaga, Q4 Capital, J4 Capital, and the Investment Funds.  Slaga, Q4 Capital, and J4 Capital also provided to investors forged account statements, as well as the forged letter from Deloitte, falsely showing grossly inflated account balances for the Investment Funds.  Finally, Slaga misused nearly $2.9 million of investor funds for personal uses including, among other things, travel, restaurants, jewelry, and rent for properties in Florida, the Bahamas, and Barbados.

48.    By engaging in the acts and conduct alleged herein, Slaga, Q4 Capital, and J4 Capital, directly or indirectly, in the offer or sale of a security, by the use of

any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

      a.    knowingly or recklessly employed a device, scheme, or artifice to defraud; and/or

      b.    knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.    knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

49.    By reason of the foregoing, Slaga, Q4 Capital, and J4 Capital have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

***(Against Slaga, Q4 Capital, and J4 Capital)***

50.    Plaintiff re-alleges and incorporates paragraphs 1 through __ of this Complaint by reference as if set forth verbatim in this Claim.

51.    Among other things, Slaga, Q4 Capital, and J4 Capital made various misrepresentations and omissions to investors in the PPMs, Slide Deck, and Investor Updates.  Slaga, Q4 Capital, and J4 Capital misrepresented Slaga's true identity through the use of the Renko alias.  They also falsely claimed that Renko, on behalf of Q4 Capital and J4 Capital, made $2,000,000 in capital contributions to the

respective Investment Funds, and that, in the case of the J4 Fund, that fund had already closed on $125 million of commitments from institutional and other investors.  Slaga, Q4 Capital, and J4 Capital also misrepresented to investors that the Deloitte, Goldman, and JP Morgan had relationships with and provided services for the Slaga, Q4 Capital, J4 Capital, and the Investment Funds.  Slaga, Q4 Capital, and J4 Capital also provided to investors forged account statements, as well as the forged letter from Deloitte, falsely showing grossly inflated account balances for the Investment Funds.  Finally, Slaga misused nearly $2.9 million of investor funds for personal uses including, among other things, travel, restaurants, jewelry, and rent for properties in Florida, the Bahamas, and Barbados.

52.     By engaging in the acts and conduct alleged herein, Slaga, Q4 Capital, and J4 Capital, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, knowingly or recklessly:

     (a)     employed devices, schemes, or artifices to defraud; and/or

     (b)     made untrue statements of material facts, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

     (c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

53.     By reason of the foregoing, Slaga, Q4 Capital, and J4 Capital violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF

**Unregistered Offer and Sale of Securities**

**Violations of Sections 5(a) and (c) of the Securities Act**

**[15 U.S.C. §§ 77e(a) & (c)]**

*(Against Slaga, Q4 Capital, and J4 Capital)*

54.    Plaintiff re-alleges and incorporates paragraphs 1 through __ of this Complaint by reference as if set forth verbatim in this Claim.

55.    Between December 2017 and June 2019, Slaga, Q4 Capital, and J4 Capital collectively raised approximately $3.5 million by offering and selling interests in the Investment Funds to persons throughout the United States.  However, Defendants never registered these securities offerings the offer and sale of these interests with the Commission, and no exemption from registration applied.

56.    By engaging in the conduct described herein, Slaga, Q4 Capital, and J4 Capital, directly or indirectly:

  a.    made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect;

  b.    for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

  c.    made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

57.    By reason of the foregoing, Slaga, Q4 Capital, and J4 Capital have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the

Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## FOURTH CLAIM FOR RELIEF

### Offer and Sale of Securities by an Unregistered Broker

### Violations of Section 15(a) of the Exchange Act [15 U.S.C § 78o(a)]

### *(Against Greene)*

58.     Plaintiff re-alleges and incorporates paragraphs 1 through 4__ of this Complaint by reference as if set forth verbatim in this Claim.

59.     Between 2019 and 2022, Greene solicited investors to purchase interests in the Investment Funds.  In return for successfully soliciting investors, Greene was paid sales commissions.  He also gave investment advice and provided to investors his own account statements as a way of conveying information about the net asset value and performance of the Investment Funds.

60.     During the relevant period, Greene was not registered with, or an associated person of, a firm registered with the SEC.

61.     By engaging in the conduct described above, Greene acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act [15 U.S.C. § 78c(4)], and made use of the mails or the means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered in accordance with Section 15(b) of the Exchange Act.

62.     By engaging in the conduct described above, Greene violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

a.     Making findings of fact and conclusions of law that Defendants

16

committed the alleged violations;

b.    Permanently enjoining Slaga, Q4 Capital, and J4 Capital from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

c.    Permanently enjoining Greene from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

d.    Permanently enjoining Slaga, from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

e.    Permanently enjoining Q4 Capital and J4 Capital, from directly or indirectly, including, but not limited to, through any entity owned or controlled by either of them, participating in the issuance, purchase, offer, or sale of any security;

f.    Barring Slaga, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Sections 2l(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

g.    Ordering Slaga, Q4 Capital, and J4 Capital to disgorge, jointly and severally, all ill-gotten gains they received as a result of the conduct alleged herein, together with pre-judgment interest, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

h.    Ordering Greene to disgorge all ill-gotten gains he received as a result of

the conduct alleged herein, together with pre-judgment interest, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

i.     Ordering Slaga, Q4 Capital, and J4 Capital to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

j.     Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

k.     Granting such other and further relief as this Court may determine to be just and necessary.

Dated:  August 7, 2023          */s/ Jason P. Reinsch*
                                 Jason P. Reinsch
                                 Attorney for Plaintiff
                                 Securities and Exchange Commission